## THE INHABITANTS OF BANGOR *versus* THE INHABITANTS OF BRUNSWICK.

At the trial of an action between two towns wherein the place of settlement of a pauper is the subject of controversy, the declarations of the pauper respecting his intention, in going from one place to another, made days before he left, and unaccompanied by any acts, are not admissible in evidence.

On motions to set aside a verdict on the ground that it was against the evidence at the trial, and also on the ground of the discovery of new and material evidence since the trial, it is sufficient to authorize the granting of a new trial, if the Court are satisfied, that the facts of the case were not fully understood at the trial.

THE action was brought to recover the expenses incurred in the support of one Jones, alleged to have had a legal settlement in Brunswick.

This case came before the Court on a motion to set aside the verdict, because it was against the evidence given at the trial, and on another motion, subsequently filed, to set aside the verdict on account of the discovery of new and material evidence first known to the defendants since the trial. The report of the evidence at the trial, was agreed to be correct by the counsel, and certified to be so by the presiding Judge.

No question of law was raised, on the argument, by the counsel for the respective parties.

*J. A. Poor,* for the defendants.

*Wakefield,* for the plaintiffs.

The opinion of the Court was drawn up by

TENNEY J. — It is insisted by the defendants, that the verdict against them in this action for the recovery of the value of supplies, furnished by the plaintiffs to one William S. Jones, who was alleged to have his legal settlement in the town of

Brunswick, should be set aside on the ground that it was against the evidence in the case. On the trial of another action between the same parties, for further supplies for the same pauper, a verdict has been returned for the defendants. From the year 1834 to the year 1840, a period of more than five years, the residence of Jones had generally been in Bangor, during which time it was not shown that he received any aid as a pauper. In the summer of 1837, he went to Boston and other places in Massachusetts, and returned, the early part of September of the same year. Whether he left with the intention of residing elsewhere, without any design, at the time, of returning to Bangor, or whether he went for the purpose of obtaining more profitable or desirable employment, with the expectation to return, was a principal question at both trials. At the former, several witnesses testified, that he spoke of leaving Bangor, and declared his intention not to return. Seaman Foster said, that some time before Jones left, in the summer of 1837, he talked of going; said he should get employment as a carrier of newspapers, which his brother was printing in Boston, and repeatedly declared that he should not come back; and that "he went away in pursuance of this arrangement." According to the testimony of Wm. H. Vinton, when Jones went away, in 1837, he said he wished to better his condition and get employment; — intended to go to Boston and carry newspapers and not return. He went in the steam boat, and Mr. Garnsey gave him his passage. The declarations made by Jones to the other witnesses, touching his intentions in leaving Bangor, were made at times previous to that when he left, were unaccompanied by any acts, and might have been uttered with a very different design, from that which influenced him, when he actually took his departure.

The intentions of Jones, which he expressed to Foster were also previous to the time, when he left and were not a part of the *res gestae*. When the witness speaks of his going away, "in pursuance of this arrangement," we do not understand, that any thing was said manifesting any intention of returning

or the contrary, but that he went away as he said before, he should do.

It may perhaps have been reasonably inferred, that the declarations of Jones made to Vinton, were at the time, that he was leaving Bangor in the steamboat for Boston, if there were nothing in explanation, beyond what appears in the report, of the testimony in the trial of the first action.   But in his subsequent examination he testified, that "*not long* before he went away, *a week or three or four days,* he said there was a theatrical company here, that went away about that time, and he said they promised him employment in Boston, in tending the drop scene ; and if he did not get that chance, he should go west, where his brother was, and said he should not come back again." It did not appear that he had more than one conversation with Jones on the subject of his leaving Bangor.   This was not at the time when he was leaving and could have at most only a remote bearing upon the question at issue.

Opposed to this evidence is the express testimony of the pauper himself, who best knew his motives, that he did not leave Bangor with the intention of not returning, but for the purpose of getting work ; and if he was not successful in that, it was his design to return ; that he never abandoned his residence in Bangor, or left it, to go away elsewhere to reside. It appeared also that his name was upon the list of voters of Bangor at the annual meeting in September, 1837 ; he voted there, and his name was checked on the list.   At the last trial, it appeared that the pauper's name was added to the list in 1837, after it was made out, and that it must have been inserted upon examination.

From the whole evidence before us, we are satisfied, that the facts of the case were not fully understood at the trial, and that they should be submitted to another jury.

*New trial granted.*